**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>v.<br><br>WOODMORE HOUSE ASSISTED LIVING, INC.,<br>a corporation; WE CARE ADULT DAY CARE<br>SERVICES, INC., a corporation; QUALITY<br>CONNECTION TRANSPORTATION, INC. a<br>corporation; Denson Terry, individually, and as Chairman<br>and owner of the aforementioned corporations;<br>Gwen Terry, individually, and as President and owner of<br>the aforementioned corporations; and David Douglas,<br>individually, and as Vice President and owner of the<br>aforementioned corporations,<br><br>Defendants. | Civil Action No. |

**COMPLAINT**

Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("Plaintiff") brings this action to enjoin Woodmore House Assisted Living, Inc., We Care Adult Day Care Services, Inc., Quality Connection Transportation, Inc., Denson Terry, individually, and as Chairman and owner of the aforementioned corporations, Gwen Terry, individually, and as President and owner of the aforementioned corporations, and David Douglas, individually, and as Vice President and owner of the aforementioned corporations (collectively, "Defendants"), from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("the Act"), and for a judgment against Defendants in the total amount of back wage compensation found by the Court

to be due to any of the employees of Defendants pursuant to the Act and an equal amount due to the employees of Defendants in liquidated damages.

1. Jurisdiction of this action is conferred upon the Court by Sections 16(c) and 17 of the Act, 29 U.S.C. §§ 216(c) and 217, and by 28 U.S.C. §§ 1331 and 1345.

2. Defendant Woodmore House Assisted Living, Inc. ( "Woodmore"), is, and at all times hereinafter referenced was, a corporation duly organized under the laws of Maryland, with its principal office at 1117 Largo Road, Upper Marlboro, MD 20774, which is within the jurisdiction and venue of this Court. However, Defendant Woodmore operates out of 1717 Largo Road, Upper Marlboro, MD 20774, which also is within the jurisdiction and venue of this Court. Defendant Woodmore is a residential facility that provides personal care support services for consumer's activities of daily living, such as meals, medication management, bathing, dressing, and transportation for elderly consumers.

3. Defendant We Care Adult Day Care Services, Inc. ( "We Care"), is, and at all times hereinafter referenced was, a corporation duly organized under the laws of Maryland, with its principal office at 1717 Largo Road, Upper Marlboro, MD 20774, which is within the jurisdiction and venue of this Court. Defendant We Care is a medical adult care facility that provides daily and therapeutic actives for seniors and disabled citizen consumers.

4. Defendant Quality Connection Transportation, Inc. ("QCT") is, and at all times hereinafter referenced was, a corporation duly organized under the laws of Maryland, with its principal office at 1717 Largo Road, Upper Marlboro, MD 20774, which is within the jurisdiction and venue of this Court. Defendant QCT is a transportation company that provides transportation services to senior citizens, disabled citizens, and other consumers participating in programs offered by Defendant We Care.

5. Defendant Denson Terry is, and at all times hereinafter referenced was, the Chairman and part-owner of Defendants Woodmore, We Care, and QCT, and resides at 2908 Spriggs Request Way, Mitchellville, MD 20721. Defendant Denson Terry does, and at all times hereinafter mentioned did, business in Upper Marlboro, MD, and has overseen the daily operations of the businesses located at 1117 Largo Road, Upper Marlboro, MD 20774 and 1717 Largo Road, Upper Marlboro, MD 20774. Defendant Denson Terry maintains 45% ownership interest in Defendants Woodmore, We Care, and QCT. Defendant Denson Terry also commonly controlled and operated Woodmore, We Care, and QCT. Defendant Denson Terry has been actively involved in the day-to-day operations of Defendants Woodmore, We Care, and QCT, hired and fired employees, assigned work assignments, and set employee rates of pay. Defendant Denson Terry has acted directly or indirectly in the interest of Defendants Woodmore, We Care, and QCT in relation to their employees at all times relevant herein, and meets the definition of an employer under Section 3(d) of the Act.

6. Defendant Gwen Terry is, and at all times hereinafter referenced was, the President and part-owner of Defendants Woodmore, We Care, and QCT, and resides at 2908 Spriggs Request Way, Mitchellville, MD 20721. Defendant Gwen Terry does, and at all times hereinafter mentioned did, business in Upper Marlboro, MD, and has overseen the daily operations of the businesses located at 1117 Largo Road, Upper Marlboro, MD 20774 and 1717 Largo Road, Upper Marlboro, MD 20774. Defendant Gwen Terry maintains 45% ownership interest in Defendants Woodmore, We Care, and QCT. Defendant Gwen Terry has been actively involved in the day-to-day operations of Defendants Woodmore, We Care, and QCT, hired and fired employees, assigned work assignments, and set rates of pay. Defendant Gwen Terry has acted directly or indirectly in the interest of Defendants Woodmore, We Care, and QCT in

relation to their employees at all times relevant herein, and meets the definition of an employer under Section 3(d) of the Act.

7. Defendant David Douglas is, and at all times hereinafter referenced was, the Vice President and part-owner of Defendants Woodmore, We Care, and QCT and resides at 2112 Brink Court, Odenton, MD 21113. Defendant David Douglas does, and at all times hereinafter mentioned did, business in Upper Marlboro, MD, and has overseen the daily operations of the businesses located at 1117 Largo Road, Upper Marlboro, MD 20774 and 1717 Largo Road, Upper Marlboro, MD 20774. Defendant David Douglas maintains 5% ownership interest in Defendants Woodmore, We Care, and QCT. Defendant David Douglas has been actively involved in the day-to-day operations of Defendants Woodmore, We Care, and QCT, and hired and fired employees. Defendant David Douglas has acted directly or indirectly in the interest of Defendants Woodmore, We Care, and QCT in relation to their employees at all times relevant herein, and meets the definition of an employer under Section 3(d) of the Act.

8. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the Act, in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose. These activities constituted (and/or were related to) the providing of care for the elderly and disabled, in furtherance of the business purposes of Defendants' unified business entity.

9. At all times relevant herein, Defendants have employed, and are employing, employees in and about their place of business in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, such as medical or related supplies and other equipment, cooking supplies, and cleaning supplies

from outside of Maryland.  Further, at all times relevant herein, Defendants have had annual gross volume sales made or business done of not less than $500,000, thereby affording coverage over all their employees pursuant to Section 3(s)(1)(A) of the Act.

10. At all times relevant herein, Defendant Woodmore engaged in the operation of institutions primarily engaged in the care of the sick, the aged, or the mentally ill who reside on the premises of such institution, thereby affording coverage over all their employees pursuant to Section 3(s)(1)(B) of the Act.

11. During the period from June 9, 2014 through June 23, 2017 ("the investigative period") and continuing through the present time, Defendants employed individuals as administrative staff, maintenance and facilities workers, transit drivers, food service personnel, and health professionals  (i.e., licensed practical nurses, registered nurses, certified nursing assistants, and health aides). The employees listed in the attached Schedule A were and are primarily employed by Defendants (collectively referred to hereinafter as "Employees") at some point during the investigative period. Employees worked for at least two of the defendant entities (i.e., Defendants Woodmore, We Care, and QCT) during workweeks falling within the investigative period and received paychecks from multiple defendant entities, regardless of whether they worked for those entities during that pay period.

12. Defendants willfully violated the provisions of Sections 6 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or in the production of goods for commerce and compensating these employees at rates less than the applicable statutory minimum rate prescribed in Section 6 of the Act. Therefore, Defendants are liable for unpaid minimum wages and an equal amount of liquidated damages under Section 16(c) of the Act.

    a. For example, during the investigative period, Defendants paid employees a pay rate less than the minimum wage. Specifically, Defendants made deductions to employee wages related to the cost of completing background checks, uniforms and moving violations/tickets received while driving for Defendant QCT. In addition, Defendants did not compensate newly hired employees for tasks performed during their probationary period. Defendants required new hires to "volunteer" to work before being put on the payroll. These practices resulted in employees receiving an hourly rate that was less than the minimum wage on numerous occasions. Under Sections 6 and 15(a)(2) of the Act, Defendants were required to pay these employees the federal minimum wage of $7.25 per hour.

13. Defendants willfully violated the provisions of Sections 7 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer that those prescribed in Section 7 of the Act without compensating said employees for hours worked over 40 in a workweek at rates not less than one and one-half times their regular rates. Therefore, Defendants are liable for the payment of unpaid overtime compensation and an equal amount of liquidated damages under Section 16(c) of the Act.

    a. For example, during the investigative period, Defendants failed to compensate its employees who worked over 40 hours in a workweek one and one-half times their regular rate. Defendants paid straight time for all hours worked over 40 in a workweek. Additionally, it was Defendants' practice to treat a single employee's hours worked at any of the three entities separately, instead of combining the employee's hours worked for each of the entities during the

workweek to determine whether overtime was owed. On occasion, Defendants separated employee overtime hours as "other earnings," which Defendants paid at straight time rates. Defendants paid employees two checks to conceal overtime hours – one check for 40 hours and a second check at the employee's regular rate for hours worked over 40. Defendants' practice of paying employees straight time for all hours worked over 40 in a workweek violated Sections 7 and 15(a)(2) of the Act. Under those sections, Defendants were required to pay these employees the overtime premium rate of not less than one and one-half times their regular rates of pay.

b. Defendants also shaved employee's work hours when an employee worked more than 40 hours per week for a single Defendant. Specifically, Defendants altered employees' time and payroll records to lower the number of hours actually worked by employees and did not pay employee any wages for those hours worked. Defendants' practice of failing to pay employees for all hours worked over 40 in a workweek violated Sections 7 and 15(a)(2) of the Act. Under those sections, Defendants were required to pay these employees the overtime premium rate of not less than one and one-half times their regular rates of pay.

14. Defendants violated the provisions of Sections 11(c) and 15(a)(5) of the Act in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees' hours, payments, and deductions as prescribed by the regulations found at 29 C.F.R. Part 516. For example, Defendants failed to make, keep, and preserve accurate records of

employees' daily and weekly hours worked, hourly rates, and wages paid. 29 C.F.R. §§ 516.2(a)(1)-(4).

15. As a result of the willful violations alleged above, amounts are owed for hours worked that were paid at rates less than the rates set forth in Sections 6 and 7 of the Act for the employees named in Schedule A attached to this Complaint. Additional amounts may be due to other employees employed by Defendants during the time period covered by this Complaint (and continuing up to the time Defendants demonstrate that they came into compliance with the Act) whose identities are not now known to Plaintiff.

16. During the investigative period, Defendants continually and willfully violated the provisions of the Act as alleged above. A judgment permanently enjoining and restraining the violations herein alleged (including restraining of withholding of overtime compensation) is specifically authorized by Section 17 of the Act, 29 U.S.C. § 217.

WHEREFORE, cause having been shown, the Secretary prays for judgment against Defendants providing the following relief:

(a) For an injunction issued pursuant to Section 17 of the Act permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants who receive actual notice of any such judgment, from violating the provisions of Sections 6, 7, 11(c), 15(a)(2) and 15(a)(5) of the Act; and

(b) For judgment pursuant to Section 16(c) of the Act finding Defendants liable for unpaid minimum wage and overtime compensation due to certain of Defendants' current and former employees listed in the attached Schedule A for the period of June 9, 2014 through at least June 23, 2017, and for an equal amount due to certain of Defendants' current and former employees in liquidated damages. Additional amounts of back wages and liquidated damages

may also be owed to certain current and former employees of Defendants listed in the attached Schedule A for violations continuing after June 23, 2017, and may be owed to certain current and former employees presently unknown to the Secretary for the period covered by this Complaint; or

      (c)      In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid minimum wages and overtime compensation found due Defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621.

      FURTHER, Plaintiff prays that this Honorable Court award costs in his favor, and an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

Mailing Address:

**UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor
Office of the Regional Solicitor
201 12th Street South
Suite 401
Arlington, VA 22202-5450
(202) 693-9393 (voice)
(202) 693-9392 (fax)
amin.avni.j@dol.gov
barefield.karen@dol.gov

Kate S. O'Scannlain
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Samantha N. Thomas
Associate Regional Solicitor

Leah A. Williams
Regional Wage and Hour Counsel

*/s/* Chervonti Jones
Chervonti Jones

May 20, 2019

**Schedule A**

1. Christina Acker
2. Damon D. Adams, Jr.
3. Oluwaseun F. Adeiga
4. Olaiuimoke Aderibibge
5. Oluwaseun Akinpetide
6. Helen A. Alpa
7. Agustina Baffoe
8. Adewale A. Balogun
9. Juanita M. Barber
10. Danton D. Barns
11. Yvette Battle
12. Anthony J. Beaty
13. Rosemarie Beckford
14. Aminat A. Bello
15. Cierra Blyther
16. Countess M. Brown
17. Shaunkisha M. Brown
18. Chanee D. Butler
19. Linda L. Barnes Cain
20. Terry Caldwell
21. Dawnette G. Campbell Kincaide
22. Bonita Carter
23. Cory C. Clayton
24. Paulette V. Clayton
25. Tamara A. Cooper
26. Khaliah R. Crowder
27. Juliet Y. Damoah
28. Kailah Danley
29. Shanelle T. Dantzler
30. Ivana E. Darden
31. Vernon I. Davis
32. Trana Deirelen
33. Rena A. Dorsey
34. Famata I. Dukuly
35. Lauretta O. Edoiza
36. Diane Egwatu
37. Takang L. Enow
38. Jasmine S. Fletcher
39. India J. Ford
40. Geraldine Griffin
41. Eric D. Hamilton
42. Elaine D. Harris
43. Tanya L. Harrison

44. James E. Henry
45. Isata Jabbie
46. Diamond Jefferson
47. Alissa John
48. Teremetric Jones
49. Shamika King
50. Hanna N. Kisia
51. Mariana Koima
52. Bolanle M. Lashilola
53. Sheila Lawrence
54. Diamond I. Levy
55. Clarence E. Long
56. Ebony E. Lyons
57. Melvin S. Lyons, Jr.
58. Jamira P. Mahawa
59. Tatiana Marrow Perkins
60. Tiesha M. Marshall
61. Thomas Miller
62. Tasheka D. Morngan
63. Wilfred M. Mukete
64. Shereee Murphy Turnage
65. Dione M. Ntongwe
66. Ozioma W. Obima-Nwali
67. Alwugo Okoro
68. Iyabowale J. Olaiya
69. Sayna S. Parker
70. Porsche Pelham
71. Ayana Praytor
72. Bridgette Pree
73. Ashlyn Purifoy
74. Andre N. Raynolds
75. Damond A. Reid
76. Clara L. Robinson
77. Tara L. Ross
78. Evette Shields
79. Adetoun Shofu
80. Evan L. Smith
81. Tyree D. Steverson
82. Joel Suggs
83. James M. Tamarah
84. Mary Tarawaley
85. Jessica M. Taylor
86. Brenson G. Terry
87. Akeliah Thomas
88. William H. Thompson
89. Bi'nta M. Tolson-Reeves

12

90. Alimatu Turay
91. Gloria J. Turner
92. Comfort Vandi
93. Diane Villarreal
94. Brantly D. Waddell
95. Athena N. Walker
96. Mary J. Watkins
97. David B. Watson
98. Shamara Watson
99. Jordan Wilder
100. Asia M. Williams
101. Jalynn M. Williams
102. Sergio Williams
103. Commilus E. Woodward
104. Kennedi Wright